IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COVERALL NORTH AMERICA, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> VERICA, L.L.C., a Nebraska limited liability company, and VICKI RHEA, an individual <br><br> Defendants. | Case No. 8:11CV00255 <br><br><br><br> **AMENDED COMPLAINT** |

Pursuant to Fed.R.Civ.P. 15(a)(1)(B), Plaintiff Coverall North America, Inc., for its Amended Complaint against Defendants Verica, L.L.C. and Vicki Rhea, states and alleges as follows:

## PARTIES

1. Coverall North America, Inc. ("Coverall") is a Delaware corporation with its principal place of business in Boca Raton, Florida.

2. Defendant Verica, L.L.C. ("Verica") is a Nebraska limited liability company with its principal place of business in Omaha, Nebraska.

3. Defendant Vicki Rhea ("Rhea") is the sole member of Verica and, upon information and belief, was in charge of the day to day business activities of Verica.

## VENUE AND JURISDICTION

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. This Court has personal jurisdiction over Verica because at all times material to this action it had a principal place of business located at 11725 Arbor Street in Omaha, Nebraska and performed services in the state.

6. This Court has personal jurisdiction over Rhea because she was a resident of Nebraska until at least 2007; performed services and activities in Nebraska that form the basis of this lawsuit; is the sole member of the Nebraska entity Verica, which performed services in Nebraska that form the basis of this lawsuit; and entered into guaranties for contracts between Plaintiff and Verica, a Nebraska entity, to provide services in Nebraska, the guaranties being an inducement for Plaintiff to enter into those contracts.

7. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Nebraska; pursuant to 28 U.S.C. § 1391(a)(3) because the Defendants are subject to personal jurisdiction in Nebraska at the time this action is commenced; and/or pursuant to 28 U.S.C. § 1391(a)(1) because, upon information and belief, the Defendant Rhea resides in Omaha, Nebraska.

**FRANCHISE AGREEMENT**

8. On or about September 28, 2001, Rhea executed a Territory Franchise Agreement with Coverall that granted her the right to operate a janitorial franchise within a specified area of Nebraska.

9. On or about October 3, 2001, Rhea created Verica under the laws of the State of Nebraska.

10. On or about December 15, 2001, Rhea, on behalf of Verica, executed an amendment to the Territory Franchise Agreement which granted her additional rights to conduct business under the Coverall name in Lancaster and Otoe counties in Nebraska.

11. On or about December 15, 2001, Rhea, on behalf of Verica, executed a promissory note in the amount of $12,171.32, payable to Coverall.

12. In November of 2003, Coverall and Verica entered into a written Service Franchise Agreement (the "Franchise Agreement"), whereby Coverall granted Verica the exclusive right to own and operate a Coverall Service Franchise business (the "Business") within a specified geographic area of Nebraska and Iowa, as described in the Franchise Agreement (the "Original Territory"), for a period of twenty (20) years. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit 1**.

13. Rhea signed the Franchise Agreement on behalf of Verica. Rhea also signed the Franchise Agreement on a line on the Franchise Agreement as "Guarantor[] of Franchisee."

14. Rhea personally guaranteed all obligations of Verica under the Franchise Agreement on or about November 26, 2003. ("2003 Personal Guaranty"). A true and correct copy of the 2003 Personal Guaranty is attached hereto as **Exhibit 2**.

15. On or about November 17, 2003, Rhea, individually, executed a promissory note in the amount of $71,780, payable to Coverall. (the "2003 Promissory Note").

16. On or about February 8, 2007, Coverall and Verica entered into a First Amendment to Service Franchise Agreement (the "Amendment"), whereby Coverall expanded Verica's Original Territory to include three additional counties in the State of Iowa -- Polk, Dallas and Warren counties (the "Additional Territory" and with the Original Territory, the "Territory"). A true and correct copy of the Amendment is attached hereto as **Exhibit 3**.

17. Rhea signed the Amendment both individually and on behalf of Verica.

18. Under the Franchise Agreement Verica received the right to use certain trademarks and service marks of Coverall (the "Licensed Marks") under the terms and conditions described in the Franchise Agreement.

19. Pursuant to the terms of the Franchise Agreement, Verica was granted the right to implement the Coverall business model in the Original Territory, and to sell unit franchises to janitorial franchisees.

20. The Franchise Agreement provides, in relevant part, that:

"Franchisee agrees to pay all its obligations and liabilities to Coverall . . . when due."

Ex. 1, § 6J.

21. The Franchise Agreement requires Verica to pay Coverall a monthly royalty ("Royalty") consisting of: (a) $5^{1/2}\%$ of Franchisee's monthly "Business Revenue", as that term is defined in § 5A(1) of the Franchise Agreement; and (b) a percentage of Verica's "Regular Service Revenue", as that term is defined in § 5A(2) of the Franchise Agreement, ranging from 3% to $5^{1/2}\%$ depending on the volume of Regular Service Revenue. Ex. 1, § 5A.

22. Verica is required to pay Royalty payments for each month "within ten (10) days following the last business day of such month." Ex. 1, § 5D.

23. Verica is required to pay a minimum Royalty of $72,000 per year (the "Minimum Royalty"). The Franchise Agreement has a provision for the payment of the Minimum Royalty for any year in which Royalty payments do not exceed that amount, with such remaining Minimum Royalty to be paid by the 15th day of the first month of the following year. Ex. 1, § 5C.

24. The Franchise Agreement also provides in relevant part, that "Coverall may terminate this Agreement without opportunity to cure, unless otherwise required by state law, immediately upon receipt by the Franchisee of written notice of termination for any of the following causes: . . . [T]he Franchisee fails to pay any franchise fee, Royalty or other amounts due to Coverall (including the balance of any Minimum Royalty due, as provided in

5

Paragraph 5C hereof) within five (5) days after receiving written notice that such fees are overdue". Ex. 1, § 10B(9).

25. The Franchise Agreement provides for cross defaults between the Franchise Agreement and any other agreement between Verica and Coverall:

> Any default by [Verica] under this Franchise Agreement may be regarded as a default under any other agreement between Coverall and [Verica]. Any such default under any other agreement or any other obligation between the parties may be regarded as a default under this Agreement. Any default by [Verica] under any promissory note or security agreement or security interest related to this Service Franchise Agreement may be regarded as a default under this Agreement.

Ex. 1, § 10E.

## **PROMISSORY NOTE**

26. On or about February 10, 2007, Verica executed a promissory note in the amount of $67,465.86, payable to Coverall (the "2007 Promissory Note"), to pay a portion of the purchase price for the Additional Territory and certain other amounts described in the Amendment, including a portion of the unpaid balance under the 2003 Promissory Note. See Ex. 3, § 2B. A copy of the 2007 Promissory Note is attached hereto as **Exhibit 4**.

27. Rhea signed the 2007 Promissory Note individual and as Verica's authorized representative.

28. Rhea, individually and as Verica's authorized representative, signed a document entitled "Guaranty to Coverall Promissory Note" ("2007 Guaranty"), in which Rhea unconditionally guaranteed the obligations under the Promissory Note. A copy of the 2007 Guaranty is attached hereto as **Exhibit 5**.

## NEBRASKA FRANCHISE PRACTICES ACT

29. The franchise relationship between the parties is governed by the Nebraska Franchise Practices Act (the "NFPA"). NEB. REV. STAT. § 87-401, *et seq.*, (Reissue 2008).

30. The NFPA provides, in relevant part, that:

> It shall be a violation of sections 87-401 to 87-410 for any franchisor directly or indirectly through any officer, agent, or employee to terminate, cancel, or fail to renew a franchise without having first given written notice setting forth all the reasons for such termination, cancellation, or intent not to renew to the franchisee at least sixty days in advance of such termination, cancellation, or failure to renew, except … when the alleged grounds are … default in payment of an obligation or failure to account for the proceeds of a sale of goods by the franchisee to the franchisor or a subsidiary of the franchisor, … in which event such termination, cancellation or failure to renew may be effective immediately upon the delivery and receipt of written notice of the same.

NEB. REV. STAT. § 87-404.

## FAILURE TO PAY ROYALTIES

31. As set forth in paragraph 21 of this Complaint, the Franchise Agreement requires that Verica timely pay a monthly Royalty that is computed as set forth in § 5A of the Franchise Agreement. Ex. 1, § 5A.

32. Verica failed to make any Royalty payments for the Franchised Business to Coverall since February 2010. The total unpaid Royalties, which encompass amounts due from April 2009 to June 2011, are $62,347.79.

33. The failure to pay all Royalties in a timely manner constitutes a material breach of the Franchise Agreement.

34. As set forth in paragraph 23 of the Complaint, the Franchise Agreement requires that Verica timely pay a Minimum Royalty that is computed as set forth in § 5C of the Franchise Agreement. Ex. 1, § 5C.

35. Verica has failed to pay the Minimum Royalty for the Franchised Business to Coverall. The total unpaid Minimum Royalty amount for 2006-2010 is $228,643.91, including the unpaid Royalties for the years 2009 and 2010 in paragraph 32.

## FAILURE TO PAY PROMISSORY NOTE PAYMENTS

36. Verica was required to make monthly payments to Coverall under the 2007 Promissory Note. Ex. 4.

37. Verica has failed to make, in a timely manner, the payments under the Promissory Note due on and after March 2009.

38. The Promissory Note provides:

> Should default be made in the payment of any installment of principal or interest when due, then the whole sum of principal and interest shall become immediately due and payable at the option of Coverall, with interest from the date of such default to accrue at the rate of fifteen percent (15%) per annum until the entire unpaid principal and interest is paid.

Ex. 4.

39. Upon acceleration as permitted by the Promissory Note, the total principal amount due is Fifty Thousand Five Hundred Forty-nine and 05/100 Dollars ($50,549.05), together with interest at the default rate of fifteen percent (15%) per annum from the date of default.

**NOTICE OF TERMINATION**

40. On May 18, 2011, Coverall sent Verica and Rhea a notice of termination for the Franchise Agreement via email and Federal Express, informing them that they had materially breached the Franchise Agreement by failing to pay its debts to Coverall and advising them that the Franchise Agreement would terminate thirty (30) days from the date of the notice of termination if they failed to cure their breaches. A true and correct copy of the notice of termination is attached as **Exhibit 6** and is incorporated by reference.

41. Verica and Rhea have never cured the breaches set forth in the May 18, 2011 Notice.

42. The notice of termination complies with the termination requirements of the Franchise Agreement and the NFPA.

**COUNT I**
**DECLARATORY JUDGMENT**

43. Coverall incorporates paragraphs 1 through 42 as if set out in their entirety herein.

44. Coverall seeks a declaration that (a) Coverall properly terminated the Franchise Agreement in accordance with the Franchise Agreement and the NFPA; (b) termination of the Franchise Agreement was effective on June 20, 2011, as provided in the notice of termination, sent by email and Federal Express on May 18, 2011; and (c) Defendants must comply with the post-termination covenants contained in the Franchise Agreement.

**WHEREFORE,** Coverall requests that the Court grant the relief requested in the Prayer for Relief below.

## COUNT II
## BREACH OF CONTRACT

45. Coverall incorporates paragraphs 1 through 44 as if set out in their entirety herein.

46. By engaging in the conduct described above, Defendants materially breached the Franchise Agreement, as amended, the 2007 Promissory Note, the 2003 Guaranty, and the 2007 Guaranty.

47. Defendants' conduct proximately caused damage, and continues to cause damage, to Coverall, including, but not limited to, the amount of benefits wrongfully earned by Defendants, outstanding Royalties, promissory note payments, interest, and lost future Royalties, the exact amount of which is to be proved at trial.

48. Coverall has satisfied all conditions precedent.

**WHEREFORE,** Coverall requests that the Court grant the relief requested in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE** Coverall prays for:

1. Pursuant to Count I, a declaratory judgment ordering that:

    (a) Coverall properly terminated the Franchise Agreement in accordance with the terms of the Franchise Agreement and the NFPA;

    (b) The Franchise Agreement was terminated as of June 20, 2011; and

   (c) Defendants must comply with the post-termination covenants contained in the Franchise Agreement.

2. Pursuant to Count II, a judgment in favor of Coverall and against Defendants, awarding Coverall damages in an amount to be proven at trial;

3. A judgment awarding Coverall the costs of this action, including attorneys' fees;

4. All interest provided by law; and

5. Any and all other relief this Court deems just, equitable and proper.

        Respectfully submitted,
        COVERALL NORTH AMERICA, INC.
        Plaintiff,

        /s/ Adam W. Barney
        Trenten P. Bausch (#20655)
        Theresa D. Koller (#22437)
        Adam W. Barney (#24521)
        CLINE WILLIAMS WRIGHT
        JOHNSON & OLDFATHER, L.L.P.
        One Pacific Place
        1125 South 103rd Street, Ste. 600
        Omaha, NE 68124
        (402) 397-1700
        tbausch@clinewilliams.com
        tkoller@clinewilliams.com
        abarney@clinewilliams.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which sent notice of the same to the following:

David J. Skalka dskalka@crokerlaw.com

Richard A. DeWitt rdewitt@crokerlaw.com

/s/ Adam W. Barney