IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COVERALL NORTH AMERICA, INC., a Delaware corporation,<br><br>                   Plaintiff,<br><br>  vs.<br><br>VERICA, L.L.C., a Nebraska limited liability company, and VICKI RHEA, an individual,<br><br>                   Defendants. | Case No. 8:11-cv-00255<br><br>**DEFENDANTS VERICA, L.L.C. AND VICKI RHEA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM**<br><br>**(Jury Demand Included)** |

COME NOW the Defendants Verica, L.L.C. ("Verica") and Vicki Rhea ("Rhea") (collectively "Defendants") and for their answer to Plaintiff Coverall North America, Inc.'s ("CNA") Amended Complaint ("Complaint"), state and allege as follows:

1.    Defendants admit paragraph 1 of the Complaint.

2.    Defendants admit Verica is a Nebraska limited liability company but deny the remainder of paragraph 2 of the Complaint. Defendants affirmatively allege that Verica's principal place of business is in Polk County, Iowa.

3.    Defendants deny paragraph 3 of the Complaint. Defendants affirmatively allege that Rhea has been a resident of Iowa since 2007, that Verica is a manager-managed limited liability company, and that Rhea is not Verica's manager.

4.    Defendants admit paragraph 4 of the Complaint.

5.    Defendants deny paragraph 5 of the Complaint, but admits that this Court has personal jurisdiction over Verica.

6. Defendants deny paragraph 6 of the Complaint. The Court does not have personal jurisdiction over Defendant Rhea as she is not a resident of Nebraska and has not been since 2007, and the day-to-day activities of Verica, a manager-managed limited liability company, are not managed by her.

7. Defendants deny paragraph 7 of the Complaint.

8. Defendants deny paragraph 8 of the Complaint.

9. Defendants deny paragraph 9 of the Complaint.

10. Defendants deny paragraph 10 of the Complaint.

11. Defendants deny paragraph 11 of the Complaint.

12. Defendants admit that in November 2003 CNA and Verica entered into an agreement, the Franchise Agreement, and Exhibit 1 to the Complaint is a true and complete copy of the Franchise Agreement, but deny the remainder of paragraph 12 of the Complaint as the Franchise Agreement speaks for itself.

13. Defendants admit the first sentence of paragraph 13 of the Complaint but deny the second sentence of the paragraph 13 of the Complaint as the Franchise Agreement speaks for itself. Defendants affirmatively allege that Rhea is not a party to the Franchise Agreement, as acknowledged by CNA in its original complaint and paragraph 12 of the present Complaint. The title "GUARANTORS OF FRANCHISEE" does not state or even imply a contractual promise by Rhea to CNA. Rhea was not "a shareholder of any corporate entity constituting the Franchisee"; she was a limited liability company member of Defendant Verica.

14. Defendants deny paragraph 14 of the Complaint. Defendants affirmatively allege that in CNA's original complaint filed herein, it made no mention of Exhibit 2 and instead alleged that Rhea personally guaranteed Verica obligations by signing the Franchise Agreement

even though CNA also stated Rhea is not a party to the Franchise Agreement, which is inconsistent with its present allegations.

15. Defendants deny paragraph 15 of the Complaint.

16. Defendants admit that on February 8, 2007, CNA and Verica entered into an amendment to the Franchise Agreement, the Amendment, and Exhibit 3 to the Complaint is a true and complete copy of the Amendment, but deny the remainder of paragraph 16 of the Complaint as the Amendment speaks for itself.

17. Defendants deny paragraph 17 of the Complaint. Defendants affirmatively allege that Defendant Rhea is not a party to the Amendment, as acknowledged by CNA in its original complaint and the present Complaint. The Amendment states that promissory notes "shall be personally guaranteed by Vicki Rhea" which is not a guaranty but rather a promise by Verica that Rhea will enter a guaranty.

18. Defendants admit paragraph 18 of the Complaint.

19. Defendants deny paragraph 19 of the Complaint as the Franchise Agreement speaks for itself. Defendants affirmatively allege that the Coverall business model was found by the U.S. District Court for the District of Massachusetts to be "**. . . a modified Ponzi scheme--a company that does not earn money from the sale of goods and services, but from taking in more money from unwitting franchisees to make payments to previous franchisees**." *Awuah v. Coverall North America, Inc.*, 707 F.Supp.2d 80, 84 (D. Mass. 2010). CNA's business model requires local franchisees pay franchise fees, only to have the franchisees' labor they do and what they will be paid for that labor directly controlled by CNA. CNA's business model as to this case involved potentially five levels of a sales pyramid. CNA sold a franchise to (2nd level) Verica, their agreement contemplated and Verica in fact in turn sold sub-franchises to (3rd

level) local operators, referred to in the Complaint as Janitorial Franchisees. Local operators have the right to hire employees to assist or perform services (4th level) but upon information and belief, some sub-franchisee local operators hire subcontractors upon CNA's direction and those subcontractors have (5th level) employees. To obtain certain customer accounts, called "national accounts", CNA, and not the local franchisee, generally underbids traditional industry players who only have two levels to pay rather than three-five levels, which binds the local franchisee as to the amount it will receive for its services regardless of costs and expenses. CNA's business model continues to operate without revenue from properly priced services by continually seeking new investors to pay, or alternately to claim and cause the forfeiture previous investors' investments. CNA's business model further continues to operate to CNA's benefit by deriving its income from a gross percentage regardless of the net profit of franchisees or subfranchisees. As the lower levels of the pyramid suffer losses they have a tendency to fail and CNA and the other companies profit from the failures by accelerating notes due and reselling the accounts to new investors. The revenue stream received from this churning is a calculation that CNA's former CFO created a formula to track, as alleged in wage payment and payroll withholding litigation against CNA in California.

20.     Defendants deny paragraph 20 of the Complaint as the Franchise Agreement speaks for itself.

21.     Defendants deny paragraph 21 of the Complaint as the Franchise Agreement speaks for itself.

22.     Defendants deny paragraph 22 of the Complaint as the Franchise Agreement speaks for itself.

23. Defendants deny paragraph 23 of the Complaint. Defendants affirmatively allege CNA has never once before the filing of the Complaint ever demanded such claimed minimum royalty, and never declared Defendant Verica in default of the Franchise Agreement for failing to pay such minimum royalty. CNA waived this provision no later than when it executed the Amendment with Defendant Verica, or alternatively waived this provision when it sent out its May 18, 2011 letter and did not include a demand for such minimum royalty, which if claimed would have been required to be in said letter by Nebraska law, Neb. Rev. Stat. § 87-404.

24. Defendants deny paragraph 24 of the Complaint. Defendants affirmatively allege said quoted clause in the Franchise Agreement is modified by state and federal law, including but not limited to that franchises may only be terminated by a franchisor for good cause as defined by Nebraska and Iowa law, and that a notice of termination give <u>all</u> reasons for such termination.

25. Defendants deny paragraph 25 of the Complaint as the Franchise Agreement speaks for itself.

26. Defendants admit that on or about February 10, 2007, Verica executed a document entitled "Promissory Note", and Exhibit 4 to the Complaint is a true and complete copy of the said document, but deny the remainder of paragraph 26. Defendants affirmatively allege Defendant Rhea has not been a party to any promissory note executed in favor of Coverall and is not a party to the Promissory Note document. Defendants affirmatively allege that Exhibit 4 is not a promissory note as defined by law as it does not promise payment to a party <u>or its order</u>.

27. Defendants deny paragraph 27 of the Complaint. Defendants affirmatively allege that the only party promising or agreeing to anything in the Promissory Note document is Defendant Verica. The Promissory Note document includes no terms of promise or agreement

by Defendant Rhea. Her signature under "individually" cannot therefore be a guaranty. The language in Section 3 of the Amendment is an agreement to execute a guaranty, but is not a guaranty itself, and itself does not state Defendant Rhea shall guaranty the obligations of Defendant Verica within the Promissory Note document.

28. Defendants deny paragraph 28 of the Complaint. Defendants affirmatively allege that in CNA's original complaint filed herein, it made no mention of Exhibit 5 and instead alleged that Rhea personally guaranteed Verica obligations in the Promissory Note document by signing the Promissory Note document, which is inconsistent with its present allegations.

29. Defendants admit the NFPA is one set of laws that governs the contractual relationships between CNA and Defendant Verica, but deny the remainder of Paragraph 29 of the Complaint.

30. Paragraph 30 of the Complaint is a citation to law only to which no answer is needed, and therefore Defendants deny paragraph 30 of the Complaint.

31. Defendants deny paragraph 31 as the Franchise Agreement speaks for itself. Defendants affirmatively allege CNA had waived the timely payment of royalties per its conduct as described in this Answer.

32. Defendants deny paragraph 32 of the Complaint. Defendants affirmatively allege that Defendant Verica has not made a royalty payment to CNA since at least June 2010 and that said nonpayment since that time was per an oral agreement with CNA that CNA would negotiate the repurchase of Verica's franchise, and further affirmatively alleges that at no time until the May 18, 2011 letter did CNA ever make demand upon Verica for royalty payments.

33. Defendants deny paragraph 33 of the Complaint.

34. Defendants deny paragraph 34 of the Complaint. Defendants reallege their affirmative allegations in response to paragraph 23 of the Complaint.

35. Defendants deny paragraph 35 of the Complaint. Defendants reallege their affirmative allegations in response to paragraph 23 of the Complaint.

36. Defendants deny paragraph 36 of the Complaint as the Promissory Note document speaks for itself. Defendants affirmatively allege CNA had waived the timely payment under the Promissory Note document per its conduct as described in this Answer.

37. Defendants deny paragraph 37 of the Complaint. Defendants affirmatively allege CNA had waived the timely payment of under the Promissory Note document per its conduct as described in this Answer.

38. Defendants deny paragraph 38 of the Complaint as the Promissory Note document speaks for itself.

39. Defendants deny paragraph 39 of the Complaint.

40. Defendants admit that CNA sent Defendants a letter dated May 18, 2011 and a true and complete copy of that letter is attached as Exhibit 6 to the Complaint, but deny the remainder of paragraph 40 of the Complaint.

41. Defendants deny paragraph 41 of the Complaint.

42. Defendants deny paragraph 42 of the Complaint.

43. As to paragraph 43, Defendants incorporate answers to paragraphs 1 through 42 of the Complaint.

44. Defendants deny paragraph 44 of the Complaint.

45. As to paragraph 45, Defendants incorporate answers to paragraphs 1 through 44 of the Complaint.

46. Defendants deny paragraphs 46 and 47 of the Complaint.

47. Defendants deny paragraph 48 of the Complaint. Defendants affirmatively allege CNA has not met all conditions precedent in at least the following manners: (1) it failed to first give notice and retract its waiver of timely payment under the Franchise Agreement and Promissory Note document; (2) it failed to give notice of default and an opportunity to cure before accelerating the amounts claimed owed under the Promissory Note document; (3) it failed to comply with the applicable Nebraska and Iowa franchise laws in regards to declaring a default and purporting to terminate Defendant Verica's franchise; (4) it failed to negotiate resolution of the dispute with Defendants before filing this lawsuit; (5) it failed to participate in mediation prior to filing this lawsuit; and (6) it failed to participate in any mediation in good faith. Items 4-6 are conditions precedent set forth in the Franchise Agreement.

## AFFIRMATIVE ALLEGATIONS

48. Defendant Verica paid CNA the franchise fee amounts set forth in the Franchise Agreeement and Amendment by cash and by delivery of promissory notes and/or written promises to pay such as the Promissory Note document.

49. Since 2007, Verica has had its physical base of operations in the State of Iowa. Verica has had no working staff in any Nebraska office after November 2008, and has had no physical office or mailing address in the State of Nebraska of any kind after August 31, 2010.

50. In 2007, CNA negotiated cleaning contracts with the restaurant chain The Cheesecake Factory, which had locations in Omaha and Des Moines. Per the Franchise Agreement and the Amendment, Verica had rights to perform the contract and receive the revenues of said contract subject to CNA's royalty. The account amounted to approximately $30,000 per month gross revenue for Verica.

51. Verica was asked to utilize as a subcontractor or as a Janitorial Franchisee to do the actual cleaning a group of people that The Cheesecake Factory utilized immediately prior to signing on to CNA. Verica considered it, but ultimately declined to utlize that group because the group refused to document their legal and residency status and refused to cooperate with Verica to determine how many hours each person was working and to analyze what time exactly was required to do the cleaning tasks. Heightening Verica's concern was at that time the Cheesecake Factory had hired cleaning companies in California and in Virginia that were then being sued for improperly treating employees as independent contractors and for violating minimum wage laws.

52. CNA pressured Verica to nonetheless utilize the group, but Verica declined. In or about October 2007, CNA wrongfully removed The Cheesecake Factory account from Verica. CNA sought to have Verica sign a document stating that Verica voluntarily agreed to not perform The Cheesecake Factory account, but Verica did not sign it.

53. After having CNA breach the Franchise Agreement multiple times, and being then concerned with the structure of CNA's System, in Summer 2009, Verica sought potential qualified buyers to purchase its Coverall franchise. Verica located interested buyers, except they stated they would not negotiate a purchase unless CNA would waive its right of first refusal in the Franchise Agreement.

54. In or about October 2009, Verica expressed to CNA that it wanted to sell its Coverall franchise and requested it waive its right of first refusal in the Franchise Agreement, indicating to CNA that the right of first refusal was effectively in the market a complete restriction on selling its franchise. CNA declined to waive that right.

55. Between October 2009 and June 2010, Verica and CNA had several verbal communications and emails in which Verica requested and CNA tenatively agreed that they

9

would enter into negotiations for CNA to repurchase Verica's Coverall franchise, although CNA stated it was not then immediately prepared to do so but would at some point in the near future. Verica advised CNA the amount it was seeking for payment of the franchise.

56. No later than June 2010, Verica advised CNA that it would withhold further payment of royalty and Promissory Note document payments pending closure of the repurchase of its Coverall franchise. CNA verbally agreed to this withholding with the understanding such amounts would be owed at closing as an offset to the purchase price.

57. Verica made no royalty payments or Promissory Note document payments to CNA after May 2010. Verica continued to perform all its other obligations in the Franchise Agreement.

58. Verica and CNA had a number of verbal communications after June 2010 regarding the repurchase of Verica's Coverall franchise, with the general response from CNA repeatedly being that CNA was working on a corporate restructure and would enter negotiations to repurchase after that restructure was completed.

59. At no time in 2010 or in 2011 until the May 18, 2011 letter did CNA make any demand upon Verica for royalty payments or payments on the Promissory Note document.

60. At no time in 2010 or in 2011 until the May 18, 2011 letter did CNA state that it would declare a default, accelerate the Promissory Note document indebtedness, and unilaterally terminate the Franchise Agreement if Verica failed to make payments under the terms of the Franchise Agreement or Promissory Note document.

61. Upon receiving the May 18, 2011 letter, Verica sought in good faith through counsel to discuss the claimed defaults and negotiate with CNA a resolution to the claimed defaults. CNA would not discuss or negotiate in good faith.

62. Shortly after June 20, 2011, CNA locked Verica out of CNA's billing system, preventing Verica from servicing its customers and paying its Janitorial Franchisees, and began invoicing Verica's customers directly and collecting amounts from those customers that were due to Verica under the Franchise Agreement.

63. CNA did not have good cause, both as defined in Iowa law and Nebraska law, to seek termination of the Franchise Agreement.

64. Iowa franchise law applies to the Franchise Agreement and Amendment since the time that the Amendment was executed, see Iowa Code 537A.10, and per Iowa law CNA was required to give Verica a reasonable period of time to cure the default before accelerating any indebtedness or terminating the Franchise Agreement. Given the facts, the 30 days provided by the May 18, 2011 letter was not a reasonable period of time, and was further unreasonable in that it purported to accelerate the maturity of the Promissory Note document indebtedness.

65. CNA and the Complaint's allegations assume that CNA can terminate the Franchise Agreement <u>and</u> cause a forfeiture of Verica's franchise fees it paid CNA for a twenty-year franchise. There are no terms in the Franchise Agreement that provide for such forfeiture, and even if the Franchise Agreement's terms did such forfeiture would be an unlawful penalty as opposed to a proper liquidated damage provision. At no time did CNA offer as part of its termination to return the franchise fees Verica paid CNA, in whole or part.

66. CNA issued the May 18, 2011 letter without first or even thereafter attempting to negotiate a resolution to the dispute as required by Section 20 of the Franchise Agreement.

67. CNA filed this lawsuit without first complying with Section 20 of the Franchise Agreement in any manner. After the lawsuit was filed and served upon Defendant Verica, Verica advised CNA of the deficiency. CNA then agreed to participate in non-binding mediation

but would not agree to dismiss this lawsuit. The parties attended mediation. CNA's first and only offer of settlement communicated to Defendants in mediation was a demand for payment to it approximately ten times the amount sought in its May 18, 2011 letter, and approximately triple the combined sum of all the monetary claims set forth in its original complaint in this lawsuit.

68.   CNA did not meet all conditions precedent under the Franchise Agreement and the law to accelerate Verica's indebtedness and seek termination of the Franchise Agreement, for the reasons including those set forth in this Answer.

## AFFIRMATIVE DEFENSES

69.   The Complaint fails to state a claim against either Defendant.

70.   This Court does not have personal jurisdiction over Defendant Rhea.

71.   Venue of this Court is improper as to Defendant Rhea.

72.   Through its express conduct and its inaction, CNA waived the timing of payment terms as to royalties in the Franchise Agreement and payments provided by the Promissory Note document. In order to strictly enforce those provisions and declare a default, accelerate indebtedness, or seek termination of the Franchise Agreement for failure to make such payments on the dates set forth in those documents, at a minimum CNA was required to first notify Verica that in the future it would now demand strict compliance with said terms of payment. Even if that was done, such a retraction of its waiver would be unjust to Verica because of a material change of position it made in reliance on the waiver.

73.   CNA is estopped from asserting the claims in the Complaint.

74.   CNA could not declare a default of the Franchise Agreement and/or terminate the Franchise Agreement because it was and is in material breach of the Franchise Agreement for the

reasons including as set forth in this Answer and in that CNA breach the implied terms of good faith and fair dealing.

75. Prior to breaches alleged by CNA, CNA was already in material breach of the Franchise Agreement, barring it from asserting its claims in this lawsuit.

76. The amounts CNA demands do not account for certain royalty payments and Promissory Note document payments Verica made.

77. The amounts CNA seeks are usurious under applicable law.

78. To the extent the law places an affirmative burden upon Defendants, CNA did not have good cause to seek termination of the Franchise Agreement and did not provide Verica a reasonable period of time to cure alleged defaults under the Franchise Agreement before accelerating indebtedness and terminating the Franchise Agreement.

79. Verica's obligations set forth in the Promissory Note document are void pursuant to law, equity, and public policy.

80. CNA's claims are barred by the applicable statute of limitations.

81. CNA's claims are barred through the doctrines of unclean hands and/or laches.

WHEREFORE, Defendants pray that this Court dismiss the Complaint with prejudice, and award Defendants their costs and attorney's fees as provided by applicable law.

## COUNTERCLAIMS OF VERICA, L.L.C.

COMES NOW Defendant Verica, L.L.C. ("Verica"), and for its counterclaims against Plaintiff Coverall North America, Inc. ("CNA"), states and alleges as follows:

### FIRST CLAIM FOR RELIEF
(Wrongful Termination)

82. Verica incorporates the allegations in paragraphs 1 through 81 above as if fully set forth herein.

83.     CNA's termination of the Franchise Agreement was not permitted under the facts and law as set forth herein, and was therefore wrongful and malicious.

84.     As a proximate result of CNA's wrongful termination, Verica has been damaged in an amount equal to greater of (1) the fair market value of a Coverall exclusive franchise for the territory the Franchise Agrement and Amendment covered, or (2) the amount of franchise fees Verica paid CNA plus the present value of expected gross revenue for the remainder of the Franchise Agreement's stated 20-year term.

WHEREFORE, Defendant Verica prays that this Court enter judgment for it and against Plaintiff CNA for general and special damages to be proven at trial together with punitive damages, interest, and attorney's fees as provided by law.

## SECOND CLAIM FOR RELIEF
**(Breach of Contract)**

85.     Verica incorporates paragraphs 1 through 81 as if fully set forth herein.

86.     CNA's removal of The Cheesecake Factory contract from Verica and failure to pay Verica revenue received relating to the Omaha and Des Moines locations is a breach of the exclusivity provisions of the Franchise Agreement.

87.     As a proximate result of that breach, Verica has been damaged in the amount of revenue received and to be received from The Cheesecake Factory as to those two locations subject to CNA's royalty fee, said amount to be determined by CNA's records.

WHEREFORE, Defendant Verica prays that this Court enter judgment for it and against Plaintiff CNA for general and special damages to be proven at trial together with interest and attorney's fees as provided by law.

### THIRD CLAIM FOR RELIEF
(Conversion)

88. Verica incorporates paragraphs 1 through 81 as if fully set forth herein.

89. Upon wrongfully terminating the Franchise Agreement, CNA intentionally began collecting upon Verica accounts receivable without being assigned them. CNA has not returned any of the amounts it has received, wrongfully converting those amounts for its own benefit.

90. Verica is entitled to proceeds of its accounts receivable.

91. CNA's conversion of Verica's accounts receivable has caused Verica damage in the amount of the Verica's accounts receivable at the time of CNA's wrongful termination, plus 12% per annum interest as provided by law.

WHEREFORE, Defendant Verica prays that this Court enter judgment for it and against Plaintiff CNA for general and special damages to be proven at trial together with 12% per annum interest and attorney's fees as provided by law.

### FOURTH CLAIM FOR RELIEF
(Breach of Contract)

92. Verica incorporates paragraphs 1 through 81 as if fully set forth herein.

93. CNA's participation in the mediation that occurred after the filing of this lawsuit was not done in good faith. By doing so, CNA breached the Franchise Agreement.

94. As a proximate result of that breach, Defendant Verica has been damaged in the amount of the attorney's fees it expended in preparation for and representation at the mediation, costs and expenses of travel to Omaha for the mediation, and other damages to be proven at trial.

WHEREFORE, Defendant Verica prays that this Court enter judgment for it and against Plaintiff CNA for general and special damages to be proven at trial together with interest and attorney's fees as provided by law.

## FIFTH CLAIM FOR RELIEF
**(Declaratory Judgment/Breach of Contract)**

95. Verica incorporates paragraphs 1 through 81 as if fully set forth herein.

96. Verica requests this Court enter a declaratory judgment stating that the law together with the terms of the Franchise Agreement and Amendment do not provide that Verica forfeits its franchise fees it paid CNA in the event of a termination by CNA of the Franchise Agreement, even if the termination is not wrongful and is provided by the facts, law, and terms of the Franchise Agreement, and further declare that if CNA effects an early termination of the Agreement that CNA is required to return to Verica all franchise fees Verica paid to CNA pursuant to the Franchise Agreement and Amendment.

97. If this Court enters such judgment, CNA's refusal to return said franchise fees upon its termination is a breach of the Franchise Agreement, which has proximately resulted in damage to Verica in the amount of said franchise fees paid and interest thereon, and this Court should grant such further relief.

WHEREFORE, Defendant Verica prays that this Court enter the declaratory judgment requested and enter judgment for Verica and against Plaintiff CNA for general and special damages to be proven at trial together with interest and attorney's fees as provided by law.

## JURY DEMAND

Defendant Verica, L.L.C. hereby demands a jury trial in Omaha, Nebraska, on all issues presented in this lawsuit. Defendant Vicki Rhea demands a jury trial in Omaha, Nebraska as to all claims made against her in this lawsuit if it is determined this Court has personal jurisdiction over her and venue is proper as to her.

DATED this  19th  day of January, 2012.

                            VERICA, L.L.C. and VICKI RHEA, Defendants

                            By  /s/ David J. Skalka
                                 Richard A. DeWitt, #11002
                                 David J. Skalka, #21537
                                 Croker, Huck, Kasher, DeWitt, Anderson &
                                    Gonderinger, L.L.C.
                                 2120 South 72nd Street, Suite 1200
                                 Omaha, Nebraska  68124
                                 (402) 391-6777
                                 (402) 390-9221 (Fax)
                                 rdewitt@crokerlaw.com
                                 dskalka@crokerlaw.com

                            Attorneys for Defendants Verica, L.L.C. and Vicki Rhea

## CERTIFICATE OF SERVICE

I hereby certify that on the  19th  day of January, 2012, I caused the above document to be filed with the Clerk of the Court using the CM/ECF system which gave notification electronically upon all parties who filed an appearance by electronic filing in this case, and I hereby certify that I have mailed by first class United States mail, postage prepaid, the document to the following:

None.

                                 /s/ David J. Skalka
                                 David J. Skalka, #21537

00466737.DOC