IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

**COVERALL NORTH AMERICA, INC.,**

   Plaintiff,

vs.

**VERICA, L.L.C. and VICKI RHEA,**

   Defendants.

8:11CV255

ORDER

   This matter is before the court on Verica, L.L.C.'s (Verica) Motion to Compel (Filing No. 67). Verica filed a brief (Filing No. 70) and an index of evidence (Filing Nos. 68 and 69) in support of the motion. Coverall North America, Inc. (Coverall) filed a brief (Filing No. 109) and an index of evidence (Filing No. 110) in opposition to the motion. Verica filed a brief (Filing No. 117) and an index of evidence (Filing No. 116) in reply. With leave of court, Coverall filed a brief (Filing No. 120) and an index of evidence (Filing No. 121) in surreply.

BACKGROUND

   This case arises from a contractual relationship between the parties for a cleaning service franchise. **See** Filing No. 35 - Amended Complaint. Coverall developed a janitorial franchise system in the field of building cleaning and maintenance services. **See generally** Filing No. 1 - Complaint ¶ 8; Filing No. 109 - Brief p. 2. On September 28, 2001, Vicki Rhea (Rhea) executed a Territory Franchise Agreement granting Rhea the right to operate a janitorial franchise within a specified area of Nebraska. **See** Filing No. 35 - Amended Complaint ¶ 8. On October 3, 2001, Rhea created Verica. *Id.* ¶ 9. On December 15, 2001, Verica, through its sole member, Rhea, executed an agreement expanding those rights to conduct business under the Coverall name into additional Nebraska counties. *Id.* ¶ 10. As part of this expansion, the defendants executed a promissory note for $12,171.32, payable to Coverall. *Id.* ¶ 11. Verica, through Rhea, purchased a Coverall master or "Service" franchise from Coverall, effective November 26, 2003, for specified counties in Nebraska and Iowa, including the Omaha and Lincoln metropolitan areas. *Id.* ¶¶ 3, 12, Ex. 1 - Service

Franchise Agreement p. 2.  The Service Franchise Agreement shows the price was $125,000, over $70,000 of which was seller financed through the execution of a separate loan document.  *Id.* Ex. 1 - Service Franchise Agreement p. 8.  In an agreement effective February 10, 2007, Verica purchased a master franchise from Coverall for additional counties in Iowa, including the Des Moines metropolitan area.  **See** Filing No. 35 - Complaint ¶ 16, Ex. 3 - First Amendment to Service Franchise Agreement p. 1.  The First Amendment to Service Franchise Agreement shows the price was $68,000, most of which was seller financed through the execution of a separate loan document entitled "Promissory Note."  **See** Filing No. 35 - Complaint ¶ 26, Ex. 3 - First Amendment to Service Franchise Agreement p. 1, Ex. 4 - Promissory Note.  The terms of Verica's franchise agreements contemplate Verica would, and in fact did, sell unit franchises to "Janitorial Franchisees" within the master franchise territories.  **See** Filing No. 35 - Amended Complaint ¶ 19.

Coverall alleges Verica failed to make minimum royalty and Promissory Note payments after March 2009.  *Id.* ¶¶ 32, 35, 37.  On May 18, 2011, Coverall notified Verica all past accrued royalties as well as the complete balance on the Promissory Note must be paid within thirty days or Coverall would terminate Verica's franchise.  *Id.* ¶ 40, Ex. 6 - Letter.  The defendants did not pay the amounts listed in the May 18, 2011, Letter.  *Id.* Amended Complaint ¶ 41.  Coverall terminated the franchise as of June 20, 2011, locked Verica out of Coverall's accounting system, and began collecting Verica's accounts receivable and operating the franchise territory.  **See** *id.* ¶ 44; Filing No. 38 - Answer and Counterclaim ¶ 62.

Based on these facts Coverall alleges two claims against Verica and Rhea.  **See** Filing No. 35 - Amended Complaint p. 12-16.  Coverall filed the initial complaint on July 25, 2011.  **See** Filing No. 1.  On January 3, 2012, Coverall filed an amended complaint.  **See** Filing No. 35.  Coverall seeks declaratory judgment (Count I) determining it properly terminated the franchise agreement and the defendants must comply with post-termination covenants.  *Id.* at 9.  Coverall also seeks recovery for breach of contract (Count II), requesting Promissory Note payments and outstanding and future royalty payments, among other things.  *Id.* at 10.  The initial complaint alleged claims for deceptive trade practices (Count III), misappropriation of trade secrets (Count IV), and

trademark infringement (Counts V and VI), however Coverall did not allege those claims in the amended complaint. **See** Filing No. 1 - Complaint p. 13-16.

On January 19, 2012, the defendants filed an answer and counterclaim. **See** Filing No. 38. The defendants deny Rhea is personally liable in this matter. *Id.* Additionally, the defendants allege Verica has not made a royalty payment since June 2010 pursuant to an oral agreement with Coverall to negotiate repurchase of the franchise. *Id.* ¶ 32. Further, the defendants contend Coverall, by its conduct, waived timely payments under the Promissory Note. *Id.* ¶ 36. Specifically, the parties disputed a cleaning contract and Verica's attempt to sell the franchise. *Id.* at 8-12. The defendants allege that in 2007 Coverall negotiated a cleaning contract with the restaurant chain The Cheesecake Factory for the Omaha and Des Moines locations, which would be serviced by Verica. *Id.* at 8-9. Verica declined to use the subcontractor preferred by Coverall because the subcontractor failed to comply with Verica's employment and work-related requests. *Id.* ¶ 51. Coverall removed The Cheesecake Factory account from Verica, asking Verica to voluntarily relinquish the account. *Id.* ¶ 52. Verica declined. *Id.* Based on concerns about Coverall, in the Summer 2009, Verica sought potential buyers for its franchise. *Id.* ¶ 53. Between October 2009 and June 2010, Verica and Coverall agreed to enter negotiations for Coverall's repurchase of Verica's franchise. *Id.* ¶ 55. The defendants allege that in June 2010 Coverall agreed Verica could withhold further royalty and Promissory Note payments pending closure of the repurchase. *Id.* ¶ 56. Coverall denies it agreed to allow Verica to cease payments. **See** Filing No. 103-2 Ex. B Derella Aff. ¶ 6. The defendants allege Coverall did not make any demand for the payments until the May 18, 2011, Letter and Coverall failed to allow a reasonable time for Verica to resolve the dispute or negotiate in good faith for a resolution. **See** Filing No. 38 - Answer and Counterclaim ¶¶ 60-68. Based on these allegations, Verica asserts five claims for relief against Coverall: wrongful termination (Claim I), breach of contract (Claims II, IV, V), and conversion (Claim III). *Id.* at 13-16. Coverall denies liability on Verica's claims. **See** Filing No. 39.

On November 16, 2012, Coverall filed a motion for partial summary judgment. **See** Filing No. 64. On the same date, Verica filed the instant motion to compel. **See** Filing No. 67. On December 21, 2012, Verica filed a motion for partial summary

judgment. **See** Filing No. 79. Initially, Verica argued certain discovery was necessary to complete briefing for the motions for summary judgment and the parties attempted to resolve their disputes on their own. Ultimately, the court denied Verica's motion to defer ruling on the motions for summary judgment until after the discovery issues were concluded. **See** Filing No. 108. In any event, the parties were able to compromise on some of the discovery issues listed in the motion to compel. **See** Filing No. 117 - Reply p. 2. For this reason and the discovery negotiations outlined in the parties' motion and briefs, the court finds the parties made sincere attempts to resolve their disputes prior to seeking court involvement as required by NECivR 7.1(i) and Fed. R. Civ. P. 37(a)(1).[1]

Verica served Coverall with requests for production of documents and interrogatories on April 27, 2012. **See** Filing No. 51 - Notice of Service. Coverall responded informally on May 4, 2012, stating Coverall would object because the interrogatories, when counted properly, exceeded the maximum number allowed, but preferred to resolve the matter informally. **See** Filing No. 68 - Skalka Aff. Ex. E May 4, 2012, Letter. In response, on May 31, 2012, Verica served amended interrogatories, in substitution for the previous set. **See** Filing No. 52 - Notice of Service. On the same date, Verica served a second set of requests for production of documents. *Id.* On July 6, 2012, Coverall served responses to the amended interrogatories and both sets of requests for production. **See** Filing No. 55 - Notice of Service; Filing No. 68 - Skalka Aff. Ex. A Answers to Interrogatories, Ex. C Response to First Set of Requests for Production, and Ex. D Response to Second Set of Requests for Production. Coverall did not produce documents at that time, but intended to produce documents "on a rolling basis" as responsive documents were identified due to complications with accessing older electronically stored information (ESI) and the volume, then approximately 16,000 documents. *Id.* Ex. F July 6, 2012, Letter. In August, Verica wrote two letters describing concerns with Coverall's objections to discovery and production of documents, since Verica had not received any production by August 22, 2012. *Id.* Ex. G Aug. 7, 2012, E-mail, Ex. H Aug. 22, 2012, Letter. Coverall continued to consider the issues through September. *Id.* Ex. I Sept. 18, 2012, Email.

---

[1] Despite Coverall's statements that additional negotiations would have resolved "much, if not all" of the issues raised in the motion to compel (Filing No. 109 - Response p. 15), the court finds the parties had exhausted the limits of their abilities to timely resolve these matters themselves.

Coverall produced 2,139 pages of documents on October 3, 2012, with approximately 1,000 of those comprising transactional documents already in Verica's possession or duplicates of emails.  **See** Filing No. 67 - Motion p. 3.  Coverall produced a single 57-page document on November 6, 2012.  *Id.*  Also on November 6, 2012, Coverall supplemented its answers to several interrogatories.  **See** Filing No. 68 - Skalka Aff. Ex. B Supp. Answers to Interrogatories.  On January 25, 2013, Coverall served supplemental answers to interrogatories.  **See** Filing No. 110 - Barney Aff. Ex. J Second Supp. Answers to Amended Interrogatories.[2]  Coverall states that on February 7, 2013, it produced about 225,500 pages of post-December 15, 2008, ESI.  **See** Filing No. 121 - Ex. 4 Koller Aff. ¶ 3.[3]  Coverall did not produce a privilege log, despite objections based on privilege, until March 5, 2013, and then only related to its initial document production.  **See** Filing No. 70 - Brief p. 7; Filing No. 109 - Response p. 40 n.7, 54-55; Filing No. 121 - Ex. 4 Koller Aff. ¶ 11.  Further, in an email sent to Verica, Coverall stated it would have the privilege log for the February production by March 20, 2013.  **See** Filing No. 116 - Skalka Aff. Ex. B p. 3 (Page ID # 1583); **see also** Filing No. 120 - Surreply p. 9.  There is no evidence in the record indicating whether Coverall supplemented the privilege log to include the February document production.

## ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Broad discovery is an important tool for the litigant, and so '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'"  ***WWP, Inc. v. Wounded Warriors Family Support, Inc.***, 628 F.3d 1032, 1039 (8th Cir. 2011) (alteration in original) (**quoting** Fed. R. Civ. P. 26(b)(1)).  Accordingly, relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978).  Mere speculation that information might be useful will not suffice; litigants seeking to compel

---

[2] The court notes no certificate of such service was filed as required by NECivR 33.1(e).
[3] The court notes no certificate of such service was filed as required by NECivR 34.1(b).

5

discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case.  See *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972).

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).  The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper.  *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections).  The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.  See *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001).  This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money, and procedure required to produce the requested discovery.  See *id.*

Federal Rule of Civil Procedure 33 provides:
> An interrogatory may relate to any matter that may be inquired into under Rule 26(b).  An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2).

Generally, "[t]he responding party must serve its answers and any objections within 30 days after being served with the interrogatories."  Fed. R. Civ. P. 33(b)(2).  "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  If an objection is made, "[t]he grounds for objecting to an interrogatory must be stated with specificity.  Any ground not

6

stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

Federal Rule of Civil Procedure 34 allows a party to request of another party production of documents for inspection and copying. Fed. R. Civ. P. 34(a). The rule applies to such documents that are "in the responding party's possession, custody, or control." *Id.* Rule 34(b)(2) further provides that "[t]he party to whom the request is directed must respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2).

Generally, the court has authority to limit the scope of discovery. ***Roberts v. Shawnee Mission Ford, Inc.***, 352 F.3d 358, 361 (8th Cir. 2003). The Federal Rules authorize the court to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Moreover, the court may also limit discovery after considering "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). The Federal Rules provide additional limitations on ESI discovery. Specifically,

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).

Interrogatory No. 4 seeks "the amounts and dates [Coverall] paid money to Verica from January 1, 2006 to the present." **See** Filing No. 68 - Skalka Aff. Ex. A Answers to Interrogatories p. 4. Coverall objected to the interrogatory on grounds of relevance, overbreadth, and undue burden. *Id.* Similarly, Request for Production No.

7

17 seeks "all documents referring or relating to payments of money [Coverall] made to Verica from January 1, 2006 to the present. *Id.* Ex. D Response to Second Set of Requests for Production p. 2. Verica states Interrogatory No. 4 and Request for Production No. 17 are relevant to "the damages claimed in this [matter] and defenses thereto" because the answer and response would be "regarding payments relating to the Defendant's franchise territory." **See** Filing No. 67 - Motion p. 4, 7; Filing No. 70 - Brief p. 8, 12. Coverall states it has produced some documents responsive to the requests for information about the financial relationship between the parties (Filing No. 109 - Response p. 24-28), however it is unclear to the court what Coverall produced responsive to this interrogatory and request for production. Coverall contends Verica failed to provide any specific direction about what it sought or thought was missing related to this interrogatory and request. *Id.* at 28. Moreover, Coverall argues Verica fails to suggest any relevance to payments made over such a broad time frame, regardless of materiality, from Coverall to Verica. *Id.* at 19, 30; Filing No. 120 - Surreply p. 10. Verica states this interrogatory and request, among others, "are relevant to wrongful termination and other of Verica's damages," none of Coverall's production has been responsive, and "Coverall's objections are improper." **See** Filing No. 117 - Reply p. 7. Verica's brief suggests the time frame, back to January 1, 2006, seeks to include "communications relating to the negotiating of the 2007 Des Moines-area franchise purchase." **See** Filing No. 70 - Brief p. 10 (specifying Request for Production No. 4). Verica provides some justification for the time period of information sought. Similarly, Verica met the threshold burden of showing payments made by Coverall to Verica related to damages and the defendants' franchise territory bear on issues in this case and appear reasonably calculated to lead to the discovery of admissible evidence. Verica fails to show, however, other unrelated payments may be relevant. To the extent Verica's interrogatory and request seek unrelated payments made by Coverall, they are overly broad. Coverall fails to meet its burden of showing an undue burden exists to produce evidence of relevant payments made to Verica. While Coverall's objections are overruled, in part, Verica provided the court no guidance as to the additional responsive outstanding discovery. Accordingly, Coverall shall provide supplemental responses to

Interrogatory No. 4 and Request for Production No. 17, if necessary, subject to the court's narrowing of the interrogatory and request.

Interrogatory Nos. 5 and 6 seek information about the amounts, dates, and to or from whom Coverall or its affiliates paid or received money relating to Verica's Service Franchise and related territory, for entities other than Verica, since January 1, 2006. **See** Filing No. 68 - Skalka Aff. Ex. A Answers to Interrogatories p. 4.  Likewise, Request for Production Nos. 18 and 19 seek all documents referring to payments made or received as described in Interrogatory Nos. 5 and 6.  *Id.* Ex. D Response to Second Set of Requests for Production p. 2.  Coverall objected to both interrogatories and requests on grounds of relevance, overbreadth, and undue burden.  *Id.* Ex. A Answers to Interrogatories at 4-5, Ex. D Response to Second Set of Requests for Production at 2-3.[4]  In addition, with regard to Request for Production No. 18, Coverall objected based on the attorney client privilege and work product doctrine.  *Id.* Ex. D Response to Second Set of Requests for Production at 3.  Despite these objections, for both requests, Coverall stated, "Coverall will produce documents detailing all payments issued and received by Coverall and its affiliates relating to Coverall's Cheesecake Factory account in Verica's former franchised territory."  *Id.*  Verica contends these interrogatories and requests are relevant to the value of Verica's business and, more generally, to damages as stated with regard to Interrogatory No. 4, above.  **See** Filing No. 67 - Motion p. 4; Filing No. 70 - Brief p. 8, 12; Filing No. 117 - Reply p. 7.  Coverall argues these interrogatories and requests seek irrelevant information because they are facially overbroad with regard to time frame and lack material content limitations.  **See** Filing No. 109 - Response p. 18-20.  Despite the objections, Coverall contends it is willing to negotiate additional discovery if Verica would describe what discovery is actually outstanding.  *Id.* at 28, 30-31.  The court finds Verica has met its burden of showing the relevance of the requested discovery.  The requests are narrowly tailored to Verica's Service Franchise and related territory.  Similarly, the time frame encompasses the period of Verica's involvement with Coverall.  Coverall fails to suggest

---

[4] It is unclear whether Coverall explicitly waived the relevancy objection to Interrogatory No. 6.  **See** Filing No. 120 - Surreply p. 10 ("While Coverall does not object as to the relevancy of Interrogatory No. 6 and RFP No. 9, Coverall does object as to relevancy of Interrogatory Nos. 4-6.").  The court will assume Coverall did not explicitly waive the relevancy objection.

9

any actual burden by being required to produce the payment information for the territory or time frame. Coverall's objections are overruled. Accordingly, Coverall shall provide supplemental responses to Interrogatory Nos. 5 and 6 and Request for Production Nos. 18 and 19. Based on the current record, the court is unable to determine whether Coverall lodged sustainable objections based on the attorney client privilege or work product doctrine. Absent the parties' ability to resolve such objections after Coverall completes the privilege log, the court will address those issues upon appropriate motion.

Interrogatory No. 7 seeks a summary of "the transaction between [Coverall] and Centre Lane Partners in early 2011, providing whether a sale of stock, sale of assets, or any transfers or assignments or property or rights occurred as part of the transaction, and . . . to what extent, if any, ownership of [Coverall] was changed." **See** Filing No. 68 - Skalka Aff. [Ex. A](#) Answers to Interrogatories p. 5. Coverall objected to the interrogatory based on relevance. *Id.* Verica argues this interrogatory is relevant to Coverall's legal standing. **See** [Filing No. 70](#) - Brief p. 8. Verica states a 2011 news release indicated Coverall was purchased by another entity, who was represented during the parties mediation. *Id.* Verica notes Coverall could produce documents, rather than a written answer, in response to the interrogatory. *Id.* Coverall states it answered the interrogatory by providing information about Centre Lane Partners acquiring interests in one of Coverall's holding companies, however "title or the rights to proceeds from causes of action or choses in action asserted by Coverall in this lawsuit have not been in any way, in whole or part, been transferred or assigned to any other person or entity." **See** [Filing No. 109](#) - Response p. 51-52. Verica does not mention this interrogatory in its reply brief to remove it from consideration or justify a supplemental response. The court finds Verica failed to meet its burden of showing a supplemental response is warranted or would provide relevant discovery. Verica's motion will be denied with regard to Interrogatory No. 7.

Interrogatory Nos. 19 and 20 seek the identity of any person Coverall consulted to determine if the actions would comply with the Nebraska or Iowa franchise laws prior to sending Verica the May 18, 2011, Letter, terminating Verica's access to the computer systems, and invoicing Verica's subfranchisees and customers in June and July 2011.

**See** Filing No. 68 - Skalka Aff. Ex. A Answers to Interrogatories p. 12-13. Coverall objected to both interrogatories on grounds of relevance and attorney-client privilege. *Id.* at 13. Verica argues these interrogatories are relevant to whether Coverall acted with good cause and in good faith to terminate the franchise or in an arbitrary and capricious manner. **See** Filing No. 70 - Brief p. 9. Verica contends it is entitled to determine whether Coverall attempted to determine its conduct was lawful prior to sending the letter and whether Coverall will rely on consultation with a third party as a defense. *Id.* Verica denies it seeks the content of any of these communications. *Id.* Coverall argues the information, if supplied, would necessarily disclose attorney client privileged materials because identifying an attorney would also identify the nature of the communication. **See** Filing No. 109 - Response p. 35-36. Coverall states Verica has never asked the more simple question of whether Coverall intends to rely on consultation with a third party as a defense, which defense Coverall has never asserted. *Id.* at 36-37. Coverall contends the analysis would be unaffected by Coverall's consultation, in any event, because the relevant statutes define good cause as a "legitimate business reason" including the franchisee's failure to comply with the terms of the franchise agreement and good faith is irrelevant. *Id.* at 37-39. Verica argues good faith remains at issue based on the implied covenant of good faith in all contracts and because Coverall's conduct, if arbitrary and capricious, creates liability, despite good cause for the termination. **See** Filing No. 117 - Reply p. 7-8. The court finds Verica failed to sustain its burden to show Interrogatory Nos. 19 and 20 bear on issues in this case. Coverall has not indicated it will rely on a third parties' advice. Moreover, Verica failed to show how the identity of a person Coverall consulted, or lack of any consultation, would bear on whether Coverall acted in good faith, assuming good faith is an issue in this matter. Accordingly, Verica's motion to compel supplemental answers to Interrogatory Nos. 19 and 20 is denied.

Request for Production No. 12 seeks all documents regarding any discussions or determination of drafting the May 18, 2011, Letter; terminating Verica's computer access; and such conduct's compliance with state franchise law. **See** Filing No. 68 - Skalka Aff. Ex. C Response to Requests for Production p. 8. Coverall objected to the request on the grounds of attorney client privilege and the work product doctrine, as well

as stating the request is vague and ambiguous. *Id.* Nevertheless, Coverall agreed to produce responsive, non-privileged documents. *Id.*; Filing No. 109 - Response p. 39-40. Aside from Coverall's failure to provide a privilege log, Verica does not indicate any outstanding documents related to this request exist. Accordingly, the court will not require Coverall to supplement its response.

Interrogatory No. 21 seeks a statement of "all contract breaches and/or defaults by Verica [Coverall was] aware of on May 18, 2011 that are not stated in the May 18, 2011 letter." **See** Filing No. 68 - Skalka Aff. Ex. A Answers to Interrogatories p. 12-13. Coverall objected to the interrogatory, arguing it is vague, ambiguous, and not limited in time as to when the breach occurred. *Id.* at 13-14. Coverall answered, subject to the objections, stating, "all material defaults that it had evidence to support were encompassed by the May 18, 2011 letter." *Id.* at 14. Verica argues the information sought in this interrogatory is relevant to Nebraska law requiring identification of all breaches when issuing a termination demand. **See** Filing No. 70 - Brief p. 9 (**citing** Neb. Rev. Stat. § 87-404); Filing No. 117 - Reply p. 8 (stating requested information is "highly relevant"). Specifically, Verica references Coverall's claim for the minimum royalties from the time of the franchise's termination until the end of the franchise term. **See** Filing No. 70 - Brief p. 9. Although the letter listed an amount for "past due royalty payments," it is silent on future royalties. **See** Filing No. 35 - Complaint ¶ 40, Ex. 6 - Letter. Coverall maintains its objections based on vagueness and ambiguity because the interrogatory is not limited as to time of a breach or breach of any particular contract or whether the breach was material. **See** Filing No. 109 - Response p. 47-48. Additionally, Coverall states it is unable to determine what "aware of" means. *Id.* Furthermore, Coverall denies the Nebraska statute applies and contends it has sufficiently answered the interrogatory. *Id.* at 48. While the information sought appears relevant, Coverall did not object on the basis of relevance. Despite the well taken objections, Coverall provided a full and unequivocal response. Should some additional contract breach or default surface, Coverall is bound by the Federal Rules requiring supplemental or amended responses subject to sanctions. **See** Fed. R. Civ. P. 26(e), 37(c). Otherwise, the court will not compel Coverall to supplement its answer to Interrogatory No. 21 at this time.

Interrogatory No. 24 seeks an itemization of "each admission either Defendant has made against their interests in this lawsuit that [Coverall has] knowledge of, providing the date made, to whom, and the substance of the admission." **See** Filing No. 68 - Skalka Aff. Ex. A Answers to Interrogatories p. 15. Coverall objected to the interrogatory, arguing it is vague, ambiguous, overly broad, and unduly burdensome. *Id.* at 15-16. Verica states:

> This is the standard interrogatory asking Plaintiff to identify admissions Plaintiff "has knowledge of" that either Defendant in this matter has made against their interests. It is clear Plaintiff refuses to respond to this objection so that it can pursue improper ambush or surprise litigation. Plaintiff's objection that Defendant Verica is not a declarant is without merit, as it is aware there are two and only two parties that could bind Verica, Dan LeRette and Vicki Rhea. Plaintiff's unduly burdensome objection is without merit; it certainly knows who within Plaintiff would have had contact with Plaintiff.

**See** Filing No. 70 - Brief p. 9. Coverall disagrees with Verica's legal conclusion and denies the interrogatory is as limited as Verica states. **See** Filing No. 109 - Response p. 48-51. Assuming the limitation, however Coverall argues the interrogatory remains overly broad and unduly burdensome requiring it to review all communications to determine with whom LeRette or Rhea may have spoken about an unlimited number of topics then ascertain how the communications may be "against the Defendants' interests." *Id.* Coverall does not dispute the relevance of the interrogatory's request aside from Coverall's inability to narrow the scope of the interrogatory. Verica indicates its concern is avoiding surprise at trial rather than requiring Coverall to engage in a fishing expedition. Both Coverall's and Verica's concerns are met by limiting the interrogatory to "any admission against interest made by Vicki Rhea or on behalf of Verica, by Dan LeRette or Vicki Rhea, that Coverall intends to use against the defendants during this lawsuit, providing the date made, to whom, and the substance of the admission." Coverall shall amend its answer to Interrogatory No. 24, as amended by the court. Additionally, Coverall is bound by the Federal Rules requiring timely supplemental or amended responses subject to sanctions. **See** Fed. R. Civ. P. 26(e), 37(c).

Interrogatory No. 29 seeks "Verica's total accounts receivable as of the date [Coverall] terminated Verica's access to [Coverall's] computer system in June 2011, and . . . what of those amounts you have received[,] . . . when received[,] and from whom." **See** Filing No. 68 - Skalka Aff. Ex. A Answers to Interrogatories p. 21. Request for Production No. 9 seeks, "documents including accounting records referring or relating to collection of Verica's accounts receivable, from June 20, 2011 to present." *Id.* Ex. C Response to First Set of Requests for Production p. 6. Coverall objected to the interrogatory and request stating, "the phrase 'Verica's total accounts receivable' is vague and ambiguous." *Id.* Ex. A Answers to Interrogatories p. 21; **see** *id.* Ex. C Response to First Set of Requests for Production p. 6. Similarly, Coverall objected to the request because the term "accounting records" is vague and ambiguous. *Id.* Ex. C Response to First Set of Requests for Production p. 6. Finally, Coverall objected "to the extent the request encompasses information protected from disclosure by the attorney client privilege or work product doctrine." *Id.* In the brief, Coverall also lodged relevancy and over breadth objections. **See** Filing No. 109 - Response p. 32. To the extent these late tendered objections are not assumed in the earlier objections, they are waived. **See** ***Pulsecard, Inc. v. Discover Card Services, Inc.***, 168 F.R.D. 295, 302-04 (D. Kan. 1996). Verica argues the term "total accounts receivable" means "all amounts owed by others to Defendant as of the date Plaintiff terminated Defendant's access to its electronic records in June 2011, limited by 'to the best of [Plaintiff's] knowledge.'" **See** Filing No. 70 - Brief p. 9-10 (alteration in original). Coverall contends Verica failed to specify what information was sought by this interrogatory to allow the parties to privately negotiate resolution. **See** Filing No. 109 - Response p. 25-28. Additionally, Coverall explains the business model creates an ambiguity about the accounts receivable because Verica did not perform the janitorial service, but did invoice and collect payments from clients on behalf of Verica's janitorial franchisees, less some fees and royalty payments. *Id.* at 33. Based on this model, Coverall argues the accounts receivable are not amounts owed by others to Verica. *Id.* Coverall suggests Verica must first "establish its legal right to what it claims are accounts receivable." *Id.* Further, Coverall argues any accounts receivable due or collected post-termination, rather than on the date of termination, are irrelevant to valuation because determining

14

value is appropriately focused on past prospects of collectability. *Id.* at 33-34. Notwithstanding these objections, Coverall produced documents disclosing "all service payments that were on Verica's 'Accounts Receivable' as of June 23, 2011," and "the aging report for 'accounts receivable' as of June 20, 2011." *Id.* at 34-35. Coverall contends it is unable to determine any production deficiency without detailed clarification by Verica. *Id.* at 35. Verica replied by clarifying only that the "requests are relevant to wrongful termination and other of Verica's damages." **See** Filing No. 117 - Reply p. 7. Verica fails to indicate any outstanding information or documents related to this interrogatory and request. Accordingly, the court will not require Coverall to supplement its responses.

Interrogatory No. 30 seeks information about "the parties involved and substantive terms of each proposal or agreement to market, sell, or attempt to sell a Business or franchise for any part of the Territory since June 1, 2011." **See** Filing No. 68 - Skalka Aff. Ex. A Answers to Interrogatories p. 21. Coverall initially objected to the interrogatory based on relevance and stated, "the terms 'Business' and 'franchise' are vague and ambiguous." *Id.* Coverall served a supplemental answer to this interrogatory and the related interrogatories (Nos. 31-34) interpreting "'Business' and 'franchise' as one in the same and encompassing only master franchises such as the one operated by Verica" on January 25, 2013. **See** Filing No. 109 - Response p. 40-41; **see also** Filing No. 110 - Barney Aff. Ex. J Second Supplemental Answers to Defendants' Amended First Set of Interrogatories. With this limitation, "Coveral states that it has not made a proposal or agreement to market, sell, or attempt to sell a master franchise for any part of Verica's former franchised territory since June 1, 2011." Filing No. 110 - Barney Aff. Ex. J Second Supplemental Answers to Defendants' Amended First Set of Interrogatories p. 12. Verica contends "whether Coverall has any proposals or agreements to sell a master franchise in Verica's Territory is highly relevant to damages, and thus Coverall's objections are improper. 'Business' cannot be vague because it is a defined term in the Franchise Agreement." **See** Filing No. 117 - Reply p. 8. Verica's reply was filed on February 22, 2013, nearly one month after Coverall served the supplemental answer. Verica fails to indicate any outstanding responsive

information related to this interrogatory exists. Accordingly, the court will not require Coverall to further supplement its answer.

Request for Production Nos. 14 and 15 seek all documents evidencing Coverall's repurchase of a franchise or settlement with a franchisee resulting in a franchise termination or transfer in the ten years preceding this case. **See** Filing No. 68 - Skalka Aff. Ex. C Response to First Set of Requests for Production p. 9. Coverall objected to these requests arguing 'franchise' is ambiguous and does not differentiate between the different types of franchises. *Id.* at 9-10. Additionally, Coverall objected on the bases of relevance, over breadth, and undue burden, and stating the response would encompass confidential information, some covered by the attorney client privilege or work product doctrine. *Id.* Verica states these requests seek documents related to Interrogatory Nos. 31-34 for which Verica described the information as "highly relevant" to Coverall's good faith and credibility surrounding the termination and to Verica's damages. **See** Filing No. 70 - Brief p. 10, 12. Coverall maintains Verica's requests are overly broad in ways similar to Interrogatory Nos. 19 and 20, as described more fully above. **See** Filing No. 109 - Response p. 41-45. Coverall argues it has already answered the related interrogatories and the requests are overly broad seeking irrelevant and potentially privileged materials. *Id.* at 45. Verica does not explicitly withdraw the motion to compel as to these requests, however Verica does not mention them in the reply or indicate what additional relevant responsive documents are outstanding. Accordingly, the court will not require Coverall to supplement its responses to Request for Production Nos. 14 and 15.

Request for Production No. 16 seeks production of "all documents referring or relating to receipts of money from Verica since January 1, 2006." Filing No. 68 - Skalka Aff. Ex. D Response to Second Set of Requests for Production p. 1. Coverall objected to this request based on relevance, also stating the request was overly broad and unduly burdensome. *Id.* at 1-2. Nevertheless, Coverall agreed to "produce documents disclosing all royalty and promissory note payments received from Verica." *Id.* at 2; **see also** Filing No. 109 - Response p. 28-29. While arguing the request is generally relevant, Verica fails to specify the relevance of any responsive documents other than those related to the royalty and promissory note payments or indicate any outstanding

responsive information related to this request exists.  **See** Filing No. 117 - Reply p. 8.  Moreover, Verica withdrew its motion to compel with respect to the interrogatory related to this request.  *Id.* at 2.  Accordingly, the court will not require Coverall to further supplement its response.

Request for Production No. 20 seeks production of "all documents supporting the contention that Verica refused to accept servicing [T]he Cheesecake Factory account for the Territory in 2007."  Skalka Aff. Ex. D Response to Second Set of Requests for Production p. 4.  Coverall did not object to Request for Production No. 20.  *Id.*  Coverall agreed to "produce responsive documents identified in accordance with the procedures outlined in the [July 6, 2012,] letter. . . ."  *Id.*  Verica argues the July 6, 2012, letter limitation, which indicates Coverall's exclusion of producing pre-December 15, 2008, ESI, should be stricken because The Cheesecake Factory account issues arose in 2007.  **See** Filing No. 70 - Brief p. 12.  Generally, Coverall argues the time period relevant to Verica's claims and defenses is January 2010 to May 2011.  **See** Filing No. 109 - Response p. 5.  However, Coverall acknowledges it has produced and relied upon some pre-December 15, 2008, materials.  Coverall states some of these earlier responsive documents were available without the need to recreate data from backup tapes, which documents have been produced.  *Id.* at 55-69.  Additionally, Coverall argues Verica has, and has itself produced, some responsive documents for the pre-December 15, 2008, period.  *Id.*  Despite the limitations discussed in the July 6, 2012, letter, Coverall has agreed to search for additional responsive documents contained in an electronic format that may be saved on individual employees' computers.  **See** Filing No. 120 - Surreply p. 2.  The parties continue to dispute whether accessing the pre-December 15, 2008, emails creates an undue burden for Coverall in terms of cost when compared to the potential relevance and benefit of the information.  Verica agreed to resolve the dispute if Coverall will search for migrated emails and recover information from the backup tapes for the period November to December 2007.  **See** Filing No. 117 - Reply p. 9.  Coverall agrees to recreate, search, and produce responsive documents from the backup tapes only if Verica pays the cost of such production.  **See** Filing No. 120 - Surreply p. 3-4.  As discussed above, Verica argues only general relevance of the document production.  Verica fails to provide legal or factual justification for the added,

and potentially burdensome, expense of recreating the backup tapes. Accordingly, the court will not require Coverall to further supplement its response to Request for Production No. 20. For the same reasons, the court will not require coverall to further supplement its responses to Request for Production Nos. 4 through 8 and 10 through 11, which generally seek documents, communications, and emails dated January 1, 2006, to the present referring or relating to the defendants. Upon consideration,

**IT IS ORDERED**:

1. Verica, L.L.C.'s Motion to Compel (Filing No. 67) is granted in part and denied in part. Verica's motion is granted with regard to Interrogatory Nos. 4, 5, 6, and 24, and Request for Production Nos. 17, 18, and 19, as those interrogatories and requests were amended by the court, and denied in all other respects.

2. **On or before May 14, 2013**, Coverall shall amend its answers and responses as provided in this order and shall serve a complete privilege log, filing notice of such service.

3. The court will hold a **telephone conference on May 23, at 10:00 a.m.** for the purpose of reviewing the preparation of the case to date and scheduling the case to trial. Plaintiff's counsel shall initiate the conference with the undersigned magistrate judge and participating counsel.

Dated this 2nd day of May, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge